## CIRCUIT COURT OF HENRICO COUNTY

Nancy Walker

   v.

George Dale Lane

March 30, 1983

Case No. A-1522-J

By JUDGE E. BALLARD BAKER

This is a civil proceeding which began by petition filed by Nancy Walker in July 1982 to have George Dale Lane declared the father of her expected child and pay support and certain expenses. The child was born September 15, 1982.

Following a hearing in the Juvenile Court, the case was heard in this Court on March 7 and March 21, 1983.

Briefly stated, it appears that Nancy Walker and Dale Lane have known each other since 1974. While the depth of their relationship varies, depending on which one is describing it, it is clear that they had intercourse at times since they met. The crucial time here is the Christmas 1981 period.

Nancy said she stayed in Dale's apartment from December 23 until December 28 and slept with Dale. She also says that Greg, Dale's then 16 year old son, came down from Maryland on December 24 and stayed

until December 27, at which time Dale took Greg and his younger son, Scott, who had also been in the apartment, to the bus station to go back to their mother in Maryland. She says Dale picked her up again on January 1 and they had intercourse that evening at his apartment.

Dale does not agree with all of this. He admits Nancy was in his apartment for 3 or 4 days around Christmas 1981, but not after New Years. They did have intercourse around Christmas, maybe Christmas Eve but not later.

Both agree that she told him of the pregnancy in late January, and the child was discussed at times thereafter. Nancy says he never denied he was the father; Dale says she never said it was his.

When the case came on in the Juvenile Court, the parties agreed to a blood grouping test. Va. Code § 20-61.2. The test of Nancy, Dale and the baby, Mathew, was done by Dr. Hossani. His report of October 1, 1982, states that:

> The blood samples were blood grouped for the following blood group systems: ABO, RH, MNSs, Kell, Duffy, Kidd and P. In addition, they were tested for the genetic markers of the human white cells known as the HLA system or Human Leukocyte Antigens.

The conclusion was that Dale

> . . . cannot be excluded as the father of child, Mathew Walker, and that paternity is highly probable, being about 99.99 per cent.

At the March 7, 1983, hearing, Dale made no effort to challenge Dr. Hossani's report, but presented a blood report of his son, Greg, computed with the blood of Nancy and the baby. This report shows "Relative Chance of Paternity: 99.98%."

Greg testified that he had intercourse with Nancy on two occasions; first, in North Carolina in the Spring of 1981 and again in Dale's apartment around Christmas 1981, but before New Years. He says he told no one because he was embarrassed, but later told his father.

Nancy denies ever having had intercourse with Greg, but does admit there were occasions when they were alone. She contends Greg returned to Maryland earlier than he says he did and was not in Dale's apartment more than three or four days around Christmas 1981.

Dr. Hossani testified at the March 7 hearing, explaining his tests and the results. He pointed out some difference between Dale and Greg. One difference is that Greg is RH positive, while Dale, as well as Nancy and the baby are RH negative. The significance of this is diminished by the fact that RH positive parents can have an RH negative child; however, if the father is RH positive and the mother RH negative, its a 50/50 chance whether the child will be positive or negative.

The blood grouping tests indicate strongly that Dale or his son, Greg, could be the father. Neither is excluded. It is really not so surprising that a son would have blood characteristics remarkably similar to those of his father.

In an article in 16 Journal of Family Law 543-555, Paul Teresaki discusses the resolution of paternity cases by HLA testing where ABO testing has not excluded. At page 549, he makes the following observations:

> Ordinarily, a comparison of nonexcluded putative father with a hypothetical man who is assumed to be random with respect to seriologic genotypes and unrelated to the putative father in question is desired. The probability that a mating of the known mother with a randomly chosen man would

> produce a child with the genetic markers in question can also be from (sic) the frequency of the markers in the general population. The <u>probability</u> <u>of</u> <u>paternity</u> for the putative father is then the ratio of his probability to the sum of the probabilities for both men . . . This paternity probability is a measure of likelihood based solely on serologic information <u>apart</u> <u>from</u> <u>any</u> <u>nongenetic</u> <u>evidence</u> <u>for</u> <u>or</u> <u>against</u> <u>paternity</u>. It should be noted that such analysis is not meaningful in distinguishing between two <u>related</u>, nonexcluded putative fathers. The most extreme example is identical twins, for whom all genetic markers are the same. (16 Journal of Family Law 549, emphasis is as in the article).

This tells the Court that the blood grouping tests used are not a means of distinguishing between Dale and his son, Greg, with respect to the likelihood of being the father of the infant, Mathew.

This case comes down to whether Nancy's testimony effectively excludes Greg as the father. This Court accepts her denial of having had intercourse with Greg. Greg's account comes a bit late, and he is the son of Dale, who he helps if his testimony is accepted.

Nancy says Dale is the father. He admits having had intercourse with her. He is not excluded by the blood grouping test, the probability of Dale being the father is 99.99%. Nancy's evidence is clear and convincing in naming Dale.

Dale's defense is that Greg also had intercourse with Nancy around the same time; that the blood grouping test does not exclude him; and that his probability is 99.98%. However, Nancy denies Greg's testimony. Dale's defense then fails in a most crucial point, and is not sufficient.

At the March 7 hearing, Nancy and Dale each filed

statements of income and expense. Nancy also listed certain medical bills relative to the birth of Mathew.

Upon consideration of the statements of the parties, and exhibits attached, this Court orders Dale to pay 50% of the medical bills shown by Nancy, 50% of the furniture and clothes, 50% of the bill of Dr. Hossani and $200.00 a month child support from November 1, 1982. This totals expenses of $1,916.50, plus $200.00 a month beginning November 1, 1982.

An allowance of $500.00 for Nancy's attorney's fee to be paid by Dale Lane will also be made.

This Court has learned that there is a process known as "electrophonesis" which may be helpful in distinguishing between related males on the probability of paternity. This testing is available at the Medical College of Virginia. If Dale Lane desires this further testing at his expense, a result of such a test will be considered by this Court upon Dale's payment of the above sums. However, unless the test results in excluding Dale, the opinion of this Court will not be likely to change.

An Order in accord, and remanding this case to the Juvenile Court, will be entered on presentation, but entry will be deferred a reasonable time if Dale Lane takes advantage of the opportunity for further testing and makes the payments indicated.